```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
TONIA SOMONE GRANT,                                   :
                                                      :
                         Plaintiff,                   :
                                                      :       16-CV-7604 (VSB) (HBP)
            -v-                                       :
                                                      :       **OPINION AND ORDER**
NANCY A. BERRYHILL, ACTING                            :
COMMISSIONER OF SOCIAL SECURITY,                      :
                                                      :
                         Defendant.                   :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __11/15/2018__

Appearances:

Howard D. Olinsky
Olinsky Law Group
Syracuse, New York
*Counsel for Plaintiff*

Sixtina Fernandez
United States Attorney's Office
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Tonia Somone Grant brings this action pursuant to § 205(g) of the Social Security Act (the "SSA"), 42 U.S.C. §§ 405(g), seeking judicial review of a determination by the Commissioner of Social Security (the "Commissioner") that she is not entitled to Supplemental Security Income ("SSI") or disability insurance benefits ("DIB"). Plaintiff and Defendant cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On November 22, 2017, Magistrate Judge Henry Pitman issued a detailed and thorough Report and Recommendation ("Report" or "R&R") recommending that Plaintiff's motion for judgment on the pleadings be granted and the Commissioner's cross-motion for

judgment on the pleadings be denied. (Doc. 16.) Before me is Defendant's objection to the R&R. For the reasons discussed below, I adopt the Report in full.

I. **Factual Background and Procedural History**

I assume the parties' familiarity with the facts and record of prior proceedings, and restate only the information necessary to explain my decision.[1]

Plaintiff was born in 1970. (R&R 3.) She worked part-time as an order clerk at a bakery between 1994 and 2000. (*Id.*) In 2009, Nurse Practitioner Barbara Wells ("NP Wells") at Community Health Hudson River Healthcare, Inc. began treating Plaintiff. (*Id.* at 5.) Plaintiff visited NP Wells on February 14, 2013, complaining of sharp, stabbing pain in her lower back for two days, which caused her to be unable to sleep. (*Id.*) NP Wells observed that Plaintiff had an antalgic gait and a slight right spasm in her mid-back.[2] (*Id.*) NP Wells prescribed Plaintiff hydrocodone-acetaminophen tablets and referred Plaintiff for an x-ray of her spine. (*Id.*) In a letter dated March 29, 2013, NP Wells stated that Plaintiff was unable to work in any capacity due to illness. (*Id.*)

After Plaintiff visited NP Wells on several more occasions in 2013 complaining of back and hip pain, NP Wells completed a Residual Functional Capacity ("RFC") Questionnaire for Plaintiff on December 10, 2013. (*Id.* at 6–8.) NP Wells stated that Plaintiff's diagnoses were bursitis, coronary artery disease, and back pain, and that she experienced lower back and hip pain. (*Id.* at 8.) NP Wells provided her opinion that Plaintiff could lift up to ten pounds occasionally, walk one-half block without rest or significant pain, sit and stand for ten minutes at a time, needed to shift positions from sitting to standing or walking, and needed ten to fifteen

---

[1] A more detailed description of the underlying facts and procedural history is contained in Magistrate Judge Pitman's Report and Recommendation, dated May 11, 2017. (Doc. 18.)

[2] Antalgic means "'counteracting or avoiding pain, as a posture or gait assumed so as to lessen pain.'" (R&R 5, n.7.)

2

minute breaks every hour during an eight-hour workday. (*Id.*) NP Wells also opined that Plaintiff would miss work more than four days per month because of her impairments. (*Id.*)

NP Wells completed a second RFC Questionnaire for Plaintiff on August 26, 2014. (*Id.* at 8–9.) NP Wells again diagnosed Plaintiff with, among other things, lower back and hip pain. She concluded that Plaintiff's impairments would frequently interfere with her ability to perform work-related tasks. (*Id.* at 9.) NP Wells reiterated her opinions that Plaintiff would need hourly breaks of ten to fifteen minutes and would miss work three to four times a month. (*Id.*) NP Wells and Dr. Bryan Labrenz completed a third RFC Questionnaire for Plaintiff on October 24, 2014. (*Id.*) They concluded—consistent with prior questionnaires—that Plaintiff would need hourly breaks and would miss three to four days per month due to her impairments. (*Id.* at 10.)

On June 4, 2013 and January 15, 2014, Plaintiff visited Dr. Edward J. Kirby, an orthopedic surgeon. (*Id.* at 10–11.) During the second appointment, Dr. Kirby diagnosed Plaintiff with lower back pain. (*Id.* at 12.) On April 2, 2014, Dr. Kirby completed a Medical Source Statement of Ability to Do Work-Related Activities, in which he opined that Plaintiff could carry up to fifty pounds occasionally, and up to twenty pounds frequently. (*Id.* at 13.) He also found that Plaintiff could sit for six hours and stand and walk for four hours during an eight-hour workday, but that she could only sit for two hours at a time and stand and walk for one hour at a time without interruption. (*Id.*) According to Dr. Kirby, Plaintiff could continuously climb, balance, stoop, and kneel, and she could frequently crouch and crawl. (*Id.*)

Plaintiff filed an application for SSI on April 16, 2013, claiming disability due to two heart attacks, blood clots in her legs, diabetes, lower back pain, high blood pressure, and high cholesterol. (R&R 2.) She later amended the onset date to March 16, 2013. (*Id.*) Her claims were initially denied on May 10, 2013. After Plaintiff requested a hearing before an

3

administrative law judge ("ALJ"), Plaintiff—with the assistance of an attorney representative—appeared and testified at a hearing before ALJ Katherine Edgell on February 28, 2014. (*Id*. 2-3.) A supplemental hearing was held on October 8, 2014, at which a vocational expert testified. (*Id*. at 3.) The ALJ issued a decision finding that plaintiff was not disabled and denying her SSI claim on January 29, 2015. (*Id*.) The Appeals Council denied her request for review on July 28, 2016. (*Id*.)

Plaintiff filed this action on September 28, 2016. (Doc. 1.) I referred the case to Magistrate Judge Pitman on September 30, 2016. (Doc. 7.) Plaintiff filed her motion for judgment on the pleadings on March 20, 2017, (Docs. 12–13), and Defendant cross-moved for judgment on the pleadings on May 15, 2017, (Docs. 14–15). Magistrate Judge Pitman issued his Report and Recommendation on November 22, 2017. (Doc. 16.) Defendant filed its objection on December 5, 2017, (Doc. 17), and Plaintiff filed her response on December 12, 2017, (Doc. 18).

## II. Legal Standards

### A. *Review of the Magistrate Judge's Report*

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A party may make objections to a report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting

Fed. R. Civ. P. 72(b)). "If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Bush v. Colvin*, No. 15 Civ. 2062 (LGS) (DF), 2017 WL 1493689, at *4 (S.D.N.Y. Apr. 26, 2017) (quoting *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)).

A party's objection "must be specific and clearly aimed at particular findings in the R&R." *Bussey v. Rock*, No. 12-CV-8267 (NSR) (JCM), 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (internal quotation marks omitted). "[T]he court will review the R&R strictly for clear error when a party makes only conclusory or general objections, or simply reiterates the original arguments." *Id.* (internal quotation marks omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (noting that reviewing court "is only obliged to review the Report for clear error" where "objections largely reiterate the arguments made to, and rejected by" the magistrate judge); *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke de novo review of the magistrate's recommendations.").

### B. *Review of the Commissioner's Decision*

In reviewing a social security claim, "it is not [the court's] function to determine de novo whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007). Instead, a reviewing court considers merely whether the correct legal standards were applied and whether substantial evidence supports the decision. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g) (on

judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). It is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id*. (internal quotation marks omitted).

### C. *Disability Standard*

To be considered disabled under the SSA, a claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," which has lasted or can be expected to last for at least 12 months, that is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(1)(A), (2)(A). The Commissioner has established a five-step evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the

claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. [T]he claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

### III. Discussion

Defendant objects to Magistrate Judge Pitman's finding that the ALJ erred in her assessment of the opinion evidence and thus failed to make her RFC determination based on substantial evidence. (Def.'s Obj. 1.)[3] Specifically, Defendant contends that the ALJ appropriately exercised her discretion in assigning the opinions of NP Wells limited weight, and the opinions of NP Wells were accepted, there is not enough evidence in the record as a whole to assess greater limitations than those incorporated in the ALJ's RFC findings. (*Id.* at 4–8.) I disagree, and adopt the Report.

#### A. *Applicable Law*

The "treating physician rule" provides that a treating physician's opinion only "given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Carter, 221 F.3d 126, 134 (2d Cir. 2000). In other words, an ALJ need not afford great or controlling weight to a treating physician when substantial evidence in support is lacking. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004). Before an ALJ can afford a treating physician less than controlling weight, she must consider various factors, including: (1) the length of the treatment relationship and frequency of

---

[3] "Def.'s Obj." refers to Defendant's Objections to the Magistrate Judge's Report and Recommendation, filed on December 5, 2017. (Doc. 17.)

7

examination; (2) the nature and extent of the treatment relationship; (3) the medical support for the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's level of specialization in the area; and (6) other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 416.927(c)(2)–(6); *see also Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). While the ALJ need not explicitly address each factor in her analysis, she must provide "good reason" for the weight she gives to the treating source's opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

Under the regulations in effect at the time of the Commissioner's ruling, the opinions of a treating nurse practitioner were not given controlling weight. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). Rather, they were considered "'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight." *Id.* Nevertheless, the factors laid out in 20 C.F.R. § 416.927 should still be applied in determining the weight assigned to "other sources." Titles II & Xvi:II & Xvi: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernment, SSR 06-03P (S.S.A. Aug. 9, 2006). The ALJ is ultimately responsible for reaching an RFC assessment based on the record as a whole. 20 C.F.R. §§ 404.1527(c)(2), 416.1927(c)(2).

  **B.** *Application*

Defendant first argues that Magistrate Judge Pitman erroneously ruled that the ALJ did not consider the appropriate factors in affording NP Wells' opinion evidence limited weight. (Def.'s Obj. 4.) While Defendant correctly notes that the ALJ is not required to explicitly address each factor, (*id.*), there is no indication that the ALJ even implicitly considered the

factors. In particular, is assessing NP Wells' opinions limited weight, the ALJ "did not consider that NP Wells had a lengthy treatment relationship with plaintiff and had been involved in the treatment of her multiple impairments." (R&R 37.) In contrast, the ALJ afforded Dr. Kirby's assessment "partial weight," despite the fact that Plaintiff had only visited Dr. Kirby twice, but had been visiting NP Wells since 2009 and every three months for over 15 years. (R&R 37–38.) In addition, the ALJ erroneously attributed NP Wells' opinion limited weight under the finding that Dr. Kirby concluded that Plaintiff was not limited by her lower back pain, despite the fact that Dr. Kirby diagnosed Plaintiff with lower back pain and bursitis of the hip, noted she limited ability to crouch and crawl, had decreased range of motion in her lower back, and recommended she receive treatment. (*Id.* at 38-39.) In other words, the ALJ failed to consider the consistency of NP Wells' opinion with the record as a whole—including Dr. Kirby's findings and diagnosis—because she failed to consider and misconstrued the record as a whole.

Indeed, the ALJ entirely ignored the substantial evidence in the record evidencing Plaintiff's back and hip pain. In addition to Dr. Kirby's diagnosis of back and hip pain, (*id.* at 40), Plaintiff's treatment notes and diagnoses indicate that she suffered chronic back and hip pain throughout the relevant period, (*id.* at 39). Plaintiff testified that she had experienced, been treated for, and needed substantial assistance as a result of back pain for years. (*Id.* at 40.) Significantly, the ALJ's overlooking of evidence signaling Plaintiff's back and hip pain was not harmless error, since she did not factor it into her RFC analysis. (*Id*. 41-42.)

Defendant contends that the fact that a particular impairment was not found severe at step two of the analysis does not offer a basis for remand. (Def.'s Obj. 5.) However, as Magistrate Judge Pitman explained, the ALJ must nevertheless consider Plaintiff's back and hip pain in her analysis even if she determines it is a non-severe impairment, *see Parker-Grose v. Astrue*, 462 F.

9

App'x 16, 18 (2d Cir. 2012) (summary order) ("A RFC determination must account for limitations imposed by both severe and nonsevere impairments."); *Salisbury v. Colvin*, No. 13cv2805 (VEC)(MHD), 2015 WL 5458816, at *44 (S.D.N.Y. Sept. 1, 2015) ("[E]ven if non-severe, the ALJ must account for limitations arising from [a] mental impairment when determining plaintiff's RFC."), *report and recommendation adopted*, No. 13-CV-2805 (VEC)(MHD), 2015 WL 5566275 (S.D.N.Y. Sept. 21, 2015), but the ALJ completely omitted Plaintiff's lower back and hip conditions from her analysis despite evidence in the record that Plaintiff "regularly sought treatment for these conditions and that NP Wells, Dr. Labrenz and Dr. Kirby diagnosed plaintiff with these conditions," (R&R 41-42). Were the ALJ to have considered Plaintiff's back and hip pain as severe or non-severe impairments, she may have accepted the October 2014 RFC assessment of NP Wells and Dr. Labrenz that Plaintiff needed unscheduled breaks and monthly absences from work.

Based on the foregoing, I agree with Magistrate Judge Pitman's reasoned conclusion that the ALJ's determination was not based on substantial evidence and that the matter should be remanded to the Commissioner for further administrative proceedings.

### IV. Conclusion

I have reviewed the remainder of Magistrate Judge Pitman's thorough Report and Recommendation for clear error and find none. Therefore, I adopt the Report in its entirety. Plaintiff's motion for judgment on the pleadings, (Doc. 12), is GRANTED to the extent that this matter be remanded for further proceedings, and the Commissioner's cross-motion for judgment on the pleadings, (Doc. 14), is DENIED. This case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Report.

The Clerk of Court is respectfully directed to terminate the open motions at Documents

12 and 14 and close this case.

SO ORDERED.

Dated: November 15, 2018
     New York, New York

_____
Vernon S. Broderick
United States District Judge